No. 110,697

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AARON KURTZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

An issue is moot when any judgment by this court would not affect the outcome of the controversy between the parties.

2.

Because mootness is a doctrine of court policy, which was developed through court precedent, appellate review of the issue is unlimited.

3.

An issue will not be dismissed as moot without clear and convincing evidence that the actual controversy has ended and a judgment by this court would not affect the parties' rights.

4.

Whether the trial court correctly applied a sentencing statute or illegally sentenced a defendant presents a question of law over which an appellate court exercises unlimited review.

1

**5.**

Generally, criminal statutes in effect on the date a defendant committed a crime govern the defendant's penalties.

**6.**

Generally, a statutory change operates only prospectively, except when (1) its language clearly shows that the legislature intended retroactive application, or (2) when the statutory change does not prejudicially affect the parties' substantive rights and is merely procedural or remedial in nature.

**7.**

K.S.A. 2013 Supp. 22-3716(c) applies to probation violations occurring on or after July 1, 2013.

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed December 12, 2014. Affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., BRUNS, J., and BUKATY, S.J.

GREEN, J.: Aaron Kurtz argues that the trial court illegally sentenced him to 60 days in jail for violating his probation for the first time. He argues that the trial court erred by not following K.S.A. 2013 Supp. 22-3716(c)(1)(B), which prohibits trial courts from ordering defendants to spend more than 18 days in jail for a first probation violation. But K.S.A. 2013 Supp. 22-3716(c)(1)(B) was not the law when Kurtz

2

committed his crimes or when he violated his probation; therefore, this statute did not govern the available sanctions the trial court could use when it sentenced Kurtz. Under the law applicable—K.S.A. 2012 Supp. 22-3716(f)—the trial court could sentence Kurtz to 60 days in jail for his first probation violation. Accordingly, we affirm.

In September 2012, Kurtz was charged with attempted aggravated robbery after he allegedly approached Carla Moore with a hand in his pocket to indicate a weapon and demanded that she give him Oxycontin. Kurtz entered into a plea agreement with the State and pled guilty to one count of attempted aggravated robbery. The court granted Kurtz a dispositional departure in his sentence, and instead of ordering him to spend 36 months in prison, the trial court imposed 36 months of probation.

In June 2013, the State moved to revoke Kurtz' probation because he had not paid toward his court costs, had not complied with his court-ordered drug treatment, had not completed court-ordered community service, had not participated in a court-ordered peer-mentoring program, had not received court-ordered mental-health services, and had let the batteries die on the GPS tracker which the court required him to wear. Kurtz stipulated to violating his probation. Accordingly, the trial court revoked his probation.

Kurtz' probation officer told the trial court that he believed Kurtz should receive a 60-day jail sentence and have his probation reinstated for another 36 months. Kurtz argued that the trial court should not have imposed a 60-day jail sanction for his first probation violation under what was then House Bill 2170 and is now K.S.A. 2013 Supp. 22-3716(c)(1)(B). The trial court disagreed and ordered Kurtz to serve 60 days in county jail and then complete his original probation sentence of 3 years with an additional 18 months of probation.

3

Kurtz appeals the imposition of the 60-day jail sanction. Nevertheless, the parties agree that while his appeal was pending, Kurtz served the 60 days in jail ordered by the trial court.

Kurtz argues that the trial court erred when it revoked his probation and sentenced him to 60 days in jail. He contends that changes made by House Bill 2170 required him to serve less jail time for his first probation violation than the 60 days he was ordered to serve. Moreover, Kurtz further contends that his 60-day jail sentence constituted an illegal punishment under the new law.

As an initial matter, the State argues that Kurtz is prohibited from complaining about the illegality of his 60-day jail sentence because he has already served his time on this sentence; therefore, the issue is moot. The State is correct that this court generally does not consider moot issues or issue advisory opinions. See *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012). An issue is moot when any judgment by this court would not affect the outcome of the controversy between the parties. *Manly v. City of Shawnee*, 287 Kan. 63, Syl. ¶ 4, 194 P.3d 1 (2008). Because mootness is a doctrine of court policy, which was developed through court precedent, appellate review of the issue is unlimited. *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012).

An issue will not be dismissed as moot, however, without clear and convincing evidence that the actual controversy has ended and a judgment by this court would not affect the parties' rights. *Montgomery*, 295 Kan. at 840-41. Further, the mootness doctrine is merely a court policy and not an absolute bar to deciding an issue. 295 Kan. at 840-41. It is therefore amenable to exceptions. 295 Kan. at 841; *Hilton*, 295 Kan. 845, Syl. ¶ 5.

One commonly applied exception to the mootness doctrine is that this court will issue decisions in circumstances where a moot issue "'is capable of repetition and raises concerns of public importance.'" *Montgomery*, 295 Kan. at 841, (quoting *State v.*

4

*DuMars*, 37 Kan. App. 2d 600, 605, 154 P.3d 1120, *rev. denied* 284 Kan. 948 [2007]). Our Supreme Court has held that providing guidance to the trial courts on lawful sentencing practices can constitute a matter of public importance. *Hilton*, 295 Kan. 845, Syl. ¶ 6.

For example, in *Hilton*, our Supreme Court considered whether Hilton had been legally sentenced, although the trial court had revoked her probation sentences and she had completed the 18 months in prison for her crimes. Our Supreme Court, however, determined that someone in Hilton's position would probably not have been able to obtain relief before the sentence had been served and before the issue had become moot. 295 Kan. at 851. The court noted that the issue with Hilton's sentence—whether the trial court had erred by aggregating her probation terms in two cases—was a common one. Moreover, the court further noted that trial courts needed to be instructed on how to proceed in light of a statute that required them to sentence defendants to consecutive probation terms for offenses committed while on probation. 295 Kan. at 851-52. It therefore remanded Hilton's case to this court to apply the capable of repetition exception to the mootness doctrine and consider Hilton's appeal on its merits. 295 Kan. at 852.

The State is correct that Kurtz has already served his 60-day jail sentence and that there is nothing this court can do to relieve him from a sentence he has already served. Nevertheless, Kurtz argues that the capable of repetition exception to the mootness doctrine applies in his case. We agree.

As in *Hilton*, no one sentenced to a 60-day jail sentence would likely obtain relief from that sentence before it was served. Also as in *Hilton*, the issue here is whether the trial court misapplied a statute that all sentencing courts must comply with when sanctioning a defendant for a probation violation. The issue is therefore subject to repetition. Further, like in *Hilton*, this issue has arisen in other cases but has evaded appellate review. See *State v. Klima*, No. 110,660, 2014 WL 3843473 (Kan. App. 2014)

5

(unpublished opinion); *State v. Delvalle*, No. 110,588, 2014 WL 2871396 (Kan. App. 2014) (unpublished opinion). Following *Hilton*, we determine that the capable of repetition exception to the mootness doctrine applies and we will consider Kurtz' appeal on its merits.

Kurtz contends that his sentence was illegal because it did not comply with certain changes in probation revocation law that are now codified at K.S.A. 2013 Supp. 22-3716(c)(1)(B). Whether the trial court correctly applied a sentencing statute or illegally sentenced a defendant presents a question of law over which this court exercises unlimited review. See *State v. Jolly*, 291 Kan. 842, 845-46, 249 P.3d 421 (2011); *State v. Hoge*, 283 Kan. 219, 225, 150 P.3d 905 (2007).

Kurtz argues that without specific findings that he presented a danger to himself or to the public, the trial court was prohibited from sentencing him to more than 18 days in jail for a first-time probation violation. Kurtz is correct that under the 2013 amendments to the probation violation sanctions statute, courts were required to impose only short jail sentences for first-time probation violations:

> "(c)(1) Except as otherwise provided, the following violation sanctions may be imposed:
>
> . . . .
>
> "(B) an intermediate sanction of confinement in jail for a total of not more than six days per month in any three separate months during the period of release supervision. The six days per month confinement may only be imposed as two-day or three-day consecutive periods, not to exceed 18 days of total confinement." K.S.A. 2013 Supp. 22-3716(c)(1)-(2).

As a result, Kurtz argues that because the trial court sentenced him to 60 days in jail, it did not comply with the 2013 amendments to the probation violation sanctions statute. Nevertheless, the State argues that the trial court did not have to comply with

6

K.S.A. 2013 Supp. 22-3716(c)(1)(B) when sanctioning Kurtz for violating his probation because the 2013 amendments were not in effect when Kurtz committed the crime for which he received probation. Moreover, K.S.A. 2013 Supp. 22-3716(c)(1)(B) was not the law when Kurtz violated his probation. Accordingly, the State contends that whether the trial court complied with K.S.A. 2013 Supp. 22-3716(c)(1)(B) is irrelevant.

Thus, we must determine whether K.S.A. 2013 Supp. 22-3716(c)(1)(B) applies to the revocation of Kurtz' probation. As stated earlier, K.S.A. 2013 Supp. 22-3716(c)(1)(B) was not in effect when Kurtz committed attempted aggravated robbery in 2012 or when he violated his probation in June 2013. Nevertheless, K.S.A. 2013 Supp. 22-3716(c)(1)(B) was law when his probation was revoked in mid-July 2013. See L. 2013, ch. 76, sec. 5 (effective July 1, 2013). Generally, the criminal statutes in effect on the date a defendant committed a crime govern the defendant's penalties. *State v. Denney*, 278 Kan. 643, 646, 101 P.3d 1257 (2004); *State v. Parker*, 48 Kan. App. 2d 68, 74, 282 P.3d 643 (2012). Thus, the only way that K.S.A. 2013 Supp. 22-3716 could apply to Kurtz' sentence is if it was meant to operate retroactively.

A statutory change operates only prospectively, except when (1) its language clearly shows that the legislature intended retroactive application or (2) when the statutory change does not prejudicially affect the parties' substantive rights and is merely procedural or remedial in nature. *State v. Reese*, 300 Kan. ___, ___, 333 P.3d149, 151-52 (2014); *State v. Dreier*, 29 Kan. App. 2d 958, 959, 34 P.3d 480 (2001).

First, we must consider the statutory language of K.S.A. 2013 Supp. 22-3716(c)(1)(B). The language must clearly direct courts to apply the statute retroactively, otherwise it operates only prospectively. We draw guidance from our Supreme Court's decision in *State v. Sutherland*, 248 Kan. 96, 106, 804 P.2d 970 (1991). In *Sutherland*, our Supreme Court gave an example of a statute where the legislature clearly intended that it was to be applied retroactively. The statute expressly stated that "*regardless of*

*when the inmate was sentenced or committed the crime for which sentenced*, good time credits shall be allocated as follows: . . . ." (Emphasis added.) K.S.A. 1989 Supp. 22-3725(a). The legislature used specific language to state that K.S.A. 1989 Supp. 22-3725 was to be applied retroactively. Unlike K.S.A. 1989 Supp. 22-3725, the legislature chose not to use specific language indicating whether K.S.A. 2013 Supp. 22-3716(c)(1)(B) was to be applied prospectively or retroactively.

For example, when the trial court sentenced Kurtz for violating his probation, nothing in the language of K.S.A. 2013 Supp. 22-3716(c)(1)(B) indicated that the legislature had intended it to operate retroactively to probation violations committed before the law's enactment. See *Dreier*, 29 Kan. App. 2d at 959. In the same line of analysis, our court has previously stated that an amendment to a probation sanction statute that reduces the harshness of penalties the court may impose for a first probation violation is a substantive amendment, not a procedural one. See 29 Kan. App. 2d 958, Syl. ¶ 2. Accordingly, when the trial court sentenced Kurtz for violating his probation, K.S.A. 2013 Supp. 22-3716(c)(1)(B) did not apply retroactively because it did not clearly state it was supposed to and because the 2013 amendments to the statute were not procedural.

Since the time Kurtz was sentenced for violating his probation, the legislature has clarified the probation violations to which it had intended K.S.A. 2013 Supp. 22-3716 to apply: only those that occurred after July 1, 2013. Specifically, as part of the Senate Substitute for House Bill 2448—which became law on July 1, 2014—it added a retroactivity provision to K.S.A. 2013 Supp. 22-3716(c):

> "(12) The violation sanctions provided in this subsection shall apply to any violation of conditions of release or assignment or a nonprison sanction occurring on and after July 1, 2013, regardless of when the offender was sentenced for the original crime

8

or committed the original crime for which sentenced." (Emphasis added.) L. 2014, ch. 102, sec. 8.

The plain language of Senate Substituted for House Bill 2448—which clearly states the legislature's intent—now tells this court that the amendment was meant to control the disposition of probation violations that occurred after July 1, 2013, regardless of when a defendant was sentenced. The legislature has therefore clarified that the date that controls the law that applies to the imposition of sanctions for violating probation is the law that existed when a defendant violated probation, not the law that existed when the defendant committed the underlying crime as this court held in *Dreier*, nor the law in effect when the probation hearing occurred. Therefore, Kurtz' argument that the 2013 amendment to K.S.A. 2013 Supp. 22-3716(c)(1)(B) should apply to him fails.

Enroute to its ruling, the trial court grounded its conclusion that K.S.A. 2013 Supp. 22-3716(c)(1)(B) did not apply retroactively on this court's holding in *Dreier*. This is still true. What the legislature has since made clear, however, is that the critical date for determining when the amendment applies is the date the defendant violated his or her probation. Even applying the 2014 clarifications of K.S.A. 2013 Supp. 22-3716(c)(1)(B) to Kurtz' case, the trial court was not bound to follow K.S.A. 2013 Supp. 22-3716(c)(1)(B) when it sentenced him. Because Kurtz violated his probation in June 2013, and the 2013 amendment only applies to violations committed after July 1, 2013, the 2013 amendments to the probation sanction statute do not apply to him under the law when he was sentenced or the law as it exists now. See L. 2014, ch. 102, sec. 8.

Even so, we must determine whether the trial court's 60-day jail sentence complied with the law that governed probation violations when Kurtz committed his crimes in 2012. K.S.A. 2012 Supp. 22-3716(b), like the new version of the statute, limited the range of sanctions a trial court could impose for a first probation violation:

9

"Except as otherwise provided, if the violation is established, the court may continue or revoke the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction and may require the defendant to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed. Except as otherwise provided, no offender for whom a violation of conditions of release . . . has been established . . . shall be required to serve any time for the sentence imposed . . . in a state facility in the custody of the secretary of corrections for such violation, unless such a person has already at least one prior assignment to a community correctional services program related to the crime for which the original sentence was imposed . . . ."

But unlike K.S.A. 2013 Supp. 22-3716(c)(1)(B), K.S.A. 2012 Supp. 22-3716(b) did not prohibit sending a defendant to county jail for his or her first probation violation or limit the amount of time a defendant could be sentenced. Compare K.S.A. 2013 Supp. 22-3716(c)(1)(B) with K.S.A. 2012 Supp. 22-3716(b).

Thus, under K.S.A. 2012 Supp. 22-3716(b), the trial court did not err by sentencing Kurtz to jail for 60 days and then reinstating his probation.

Affirmed.