NOT DESIGNATED FOR PUBLICATION

Nos. 115,082
115,097

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM J. DOWNS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed September 8, 2017. Affirmed in part, vacated in part, and remanded with directions.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MCANANY and BUSER, JJ.

BUSER, J.: In this consolidated appeal, William J. Downs appeals the district court's revocation of his probation and reinstatement of his underlying sentences in two Sedgwick County cases. On appeal, Downs contends that the district court erred in failing to impose intermediate sanctions. In addition, Downs challenges the legality of his sentence because the district court considered a 1984 juvenile adjudication for burglary as a person offense as part of his criminal history and the State concedes this issue. Thus,

1

although we affirm the revocation of Down's probation, we vacate his sentence and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

As part of a plea agreement, Downs pled guilty in Case No. 14-CR-1137 to one count of aggravated burglary and one count of theft after prior conviction. His presentencing investigation (PSI) report calculated his criminal history score as a "C" based, in part, upon the classification of a 1984 Kansas juvenile adjudication for burglary as a person felony. The district court granted Downs' request for a downward dispositional departure and sentenced him to 67 months' imprisonment, suspended to 36 months of probation.

Approximately two months later, the State moved to revoke Downs' probation because he allegedly committed a new offense. Shortly thereafter, the State charged Downs in Case No. 14-CR-2392 with one count of theft after prior conviction. On November 13, 2014, the district court held a preliminary hearing in Case No. 14-CR-2392 and a probation violation hearing in Case No. 14-CR-1137. At the conclusion of the joint hearing, the district court found that there was probable cause to believe that Downs committed the offense of theft after prior conviction and bound him over for trial in Case No. 14-CR-2392. The district court further found that the State had met its burden of showing that Downs had violated the terms of his probation in Case No. 14-CR-1137 by committing a new criminal offense.

Subsequently, Downs pled guilty in Case No. 14-CR-2392, and the district court granted his motion for a downward dispositional departure. However, a little over a month later, the district court revoked Downs' bond after he allegedly submitted a urine sample that tested positive for cocaine and subsequently admitted to consuming cocaine. Following the bond revocation, the State moved to amend its motion to revoke Downs'

2

probation in Case No. 14-CR-1137 because Downs had failed to abstain from using drugs.

On February 6, 2015, the district court held a sentencing hearing in Case No. 14-CR-2392 and a probation revocation hearing in Case No. 14-CR-1137. After defense counsel advised that Downs had no objection to the PSI, the district court found that Downs' criminal history score was "B" based, in part, upon the classification of his 1984 juvenile adjudication for burglary. The district court again granted a downward dispositional departure and sentenced Downs to 17 months—to be served consecutive to his sentence in Case No. 14-CR-1137—and suspended it to 12 months' probation. In Case No. 14-CR-1137, the district court revoked and reinstated Downs' probation "with all the requirements that were imposed previously and the added requirement that he enter and successfully complete the Community Corrections Residential Program."

In granting Downs' probation, the district court stated:

"And given the nature of the situation I'm also going to impose a requirement . . . that simply says 'Zero tolerance, no exceptions.' And what that means is whereas many people come in after being sentenced on a probation violation and they get reinstated, there will be no reinstatement. So that 84-month sentence is going to be hanging out there. And I don't say that in any—with any intent to be threatening or intimidating, but I just want to make sure that you're aware, and I know that you are, that that is just an added incentive to keep clean and dot the i's and cross the t's and do what you need to do."

Downs subsequently filed a motion to correct illegal sentence under K.S.A. 22-3504. The district court granted the motion and issued an amended sentencing journal entry. The modified sentence was 15 months' imprisonment—to be served consecutive to his sentence in Case No. 14-CR-1137—suspended to 12 months of probation.

Approximately six months later, the State moved to revoke Downs' probation in both cases. In support of its motion, the State alleged that (1) Downs submitted a urine sample that tested positive for cocaine; (2) Downs failed to report to his ISO as directed on two occasions; and (3) Downs absconded from his supervision at Community Corrections. The State subsequently amended its revocation motion to add the following alleged violation:

"On 9/3/2015, [Downs] is alleged to have committed the offenses of Distribute Opiate, Opium, Narcotic, Certain Stimulant; < 3.5 grams. No Drug Tax Stamp for Marijuana or Cont[rolled] Substance, Driving While License Cancelled/Suspended/Revoked, Use/Possess [with] intent to Use Drug Paraphernalia into Human Body, Possession of Hallucinogenic Drug according to Sedgwick County Sheriff Office Report # 15S009259."

At the probation revocation hearing, the district court heard testimony from Downs, his ISO, a deputy with the Sedgwick County Sheriff's Office, and a detective with the Sedgwick County Sherriff's Office. After considering the testimony and the arguments of counsel, the district court found that Downs had violated the terms of his probation and was no longer a suitable candidate for probation. Consequently, the district court denied Downs' request for reinstatement or imposition of an intermediate sanction and ordered him to serve a modified prison sentence of 54 months.

In reaching this decision, the district judge explained:

"Well, let me just first note, of course, this is a probation violation hearing; it's not a trial. The standard of proof is by a preponderance of evidence, not proof beyond a reasonable doubt.

"With that said, referring first to the August 11 warrant, the first allegation alleges that he had a positive UA for cocaine. There's been testimony concerning that.

4

They did do a UA that day, they tested for results, they found cocaine. By a preponderance of evidence standard, that allegation is proven.

"The second allegation says [Downs] failed to report to his ISO as directed on July 30 and August 7. The evidence is without much question that he did fail to report.

"With regard to the absconding allegation, frankly, I'm not satisfied that absconding per se is a probation violation. It's just proof of the failures to report and the continued failure to report. So I do find that he is in violation of the warrant that was issued on August 11th.

"With regard to the September 3rd warrant, and again the standard is by a preponderance of evidence, and as Counsel knows, if a jury was instructed about . . . possession, they would be instructed that possession can be sole or joint, it can be actual or constructive. The syringe was in the vehicle, he had access to it, and there is sufficient evidence then to support that allegation.

"I would note that he, himself, admitted that his driver's license was suspended on that date, so. The allegations of the warrant on September 9 are established by a preponderance of evidence.

"And I recognize, of course, there's a multitude of separate allegations that could be alleged separately, but I don't think I need to make specific findings as to each since I've found that he is in violation of at least two of those allegations.

"So I find he is in violation of probation with regard to the September 3rd incident in the warrant dated September 9.

. . . .

"Well, I certainly understand, Mr. Downs, that when the Court deals with these kinds of situations, there are human lives that are involved.

5

"I understand when offenders commit crimes, commit probation violations, they may not realize it at the time but they victimize their family members because their freedom and liberty is at stake.

"And to the extent that they place their freedom and liberty at stake in, not complete disregard but without giving full regard for the consequences of that, obviously the consequences can sometimes be very harsh. And it does affect more than just you, and I understand that fully.

"On the other hand, Mr. Downs, it's been argued by [your counsel] that we have not exhausted all of the community resources. Well, the fact of the matter is we have.

"In your case, you were given the opportunity to go to the Community Corrections Residential program. You did successfully complete it from what I understand.

"And that program, Mr. Downs, is the only program like it in the state of Kansas. No other community in Kansas has a Community Corrections Residential facility like we do. People are often told that it is the last resort before people are being sent to prison. And we have utilized every resource that's available for you.

"You were at the time of your first sentencing in 14 CR 1137 presumptive prison. You were at the time of your sentence in 14 CR 2392 presumptive prison for two reasons; one, because you were on probation for the first case; and because you're presumptive prison otherwise.

"In my experience, one thing that I have come to accept and understand is that oftentimes, without any LSI-R, any other instruments to guide me, I know that oftentimes behavior of people can best be judged by looking at their past behavior.

"You're a presumptive prison because you have prior person felonies. You go out on probation knowing what the stakes are. If you commit a violation, the stake is you may be sent to prison.

6

"In this case—again, I understand there are other lives that are affected, not just yours. And believe me when I tell you that when I impose sentence or impose sanctions on anybody, I try to be fair about it and impose a sanction that is fair and just under all the circumstances.

"So in your case, Mr. Downs, here's what I am going to do. I'm going to first find that you're in violation of your probation conditions in both cases. I am going to revoke your probation.

"I will modify the order in the following way. I will order that the sentences in the two cases run concurrently rather than consecutively. And I will reduce the sentence in 14 CR 1137, it's a 67-month controlling sentence, I will reduce that sentence to 54 months. And that will be the sentence that will be imposed and that will be the judgment of the Court."

Downs timely appealed in both cases, and we consolidated them for review.

ANALYSIS

Downs contends that the district court revoked his probation and ordered him to serve a modified prison sentence based on findings that he absconded from probation; he committed a new offense; and it would not serve his best interests by continuing on probation. Downs challenges these findings on two grounds. First, he argues that the State failed to prove by a preponderance of the evidence that he absconded from his probation. Second, he argues that the district court failed to make particularized findings stating the reasons for bypassing the graduated intermediate sanctions.

A district court's decision whether to revoke a defendant's probation generally involves two distinct components:  (1) a factual determination as to whether the State has established a violation of one or more of the conditions of probation by a preponderance of the evidence, and (2) a discretionary determination as to whether the violation warrants

7

revocation. See *State v. Skolaut*, 286 Kan. 219, 227, 182 P.3d 1231 (2008) (quoting *Black v. Romano*, 471 U.S. 606, 611, 105 S. Ct. 2254, 85 L. Ed. 2d 636 [1985]).

The State must establish commission of a violation by a preponderance of the evidence. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). This burden "is established when the evidence demonstrates a fact is more probably true than not true. [Citation omitted.]" *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007). When reviewing factual determinations, we employ the substantial competent evidence standard. Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Gannon v. State*, 303 Kan. 682, 699-700, 368 P.3d 1024 (2016).

Probation from serving a sentence is "'an act of grace by the sentencing judge and, unless otherwise required by law, is granted as a privilege and not as a matter of right.' [Citations omitted.]" *State v. Gary*, 282 Kan. 232, 237, 144 P.3d 634 (2006). Once the State has proven a violation of the conditions of probation, the disposition of the case lies within the sound discretion of the district court, as long as such discretion falls within the parameters of K.S.A. 2016 Supp. 22-3716. See *Gumfory*, 281 Kan. at 1170. A judicial action constitutes an abuse of discretion if the action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

K.S.A. 2016 Supp. 22-3716 includes a series of graduated intermediate sanctions that the district court generally must impose if an offender has violated a technical condition of his or her probation. These sanctions range from continuation or modification of the terms of the offender's probation to brief periods of confinement in jail, which gradually increase depending upon the number of sanctions already imposed. See K.S.A. 2016 Supp. 22-3716(c)(1)(A)-(D). However, a district court still has discretion to bypass the intermediate sanctions and impose the offender's underlying

8

prison sentence if the offender commits a new felony or misdemeanor or absconds from supervision. K.S.A. 2016 Supp. 22-3716(c)(8). Likewise, K.S.A. 2016 Supp. 22-3716(c)(9) authorizes a district court to bypass the intermediate sanctions "if the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction."

Here, a review of the record reveals that the State presented evidence at the probation hearing that Downs had failed to report to his ISO as directed on more than one occasion. As Downs asserts, however, "[a]bsconding is more than just not reporting." *State v. Huckey*, 51 Kan. App. 2d 451, 457, 348 P.3d 997, *rev. denied* 302 Kan. 1015 (2015). The term "[a]bscond" has been defined as "'depart[ing] secretly or suddenly, especially to avoid arrest, prosecution or service of process.' [Citation omitted.]" 51 Kan. App. 2d at 455. Based upon this definition, an individual cannot be labeled as an absconder "'just because he has not reported as directed to the probation office, in the absence of a showing that he has fled or hidden himself from the jurisdiction of the court.' [Citation omitted.]" 51 Kan. App. 2d at 457.

Although we do not find substantial competent evidence in the record to support a finding that Downs absconded from supervision under K.S.A. 2016 Supp. 22-3716(c)(8), we agree with the State's contention that the district court did *not* find that Downs absconded. Rather, the district court carefully articulated its findings with respect to each of the alleged probation violations, and stated, "With regard to the absconding allegation, frankly, *I'm not satisfied that absconding per se is a probation violation*. It's just proof of the failures to report and the continued failure to report." (Emphasis added.)

The district court's journal entry in a criminal proceeding is merely a record of the sentence imposed, as "[s]entencing . . . takes place when the [district] court pronounces the sentence from the bench. [Citations omitted.]" *State v. Jackson*, 291 Kan. 34, 35, 238

9

P.3d 246 (2010). "[W]here the sentence announced from the bench differs from the sentence later described in the journal entry, the orally pronounced sentence controls. [Citations omitted.]" *State v. Brown*, 298 Kan. 1040, 1057, 318 P.3d 1005 (2014). As such, the appropriate remedy would be for the district court to issue a nunc pro tunc journal entry clarifying that it did not make a finding that Downs absconded from supervision in violation of K.S.A. 2016 Supp. 22-3716(c)(8).

Next, Downs contends that the district judge erred when he bypassed the graduated intermediate sanctions set forth in K.S.A. 2016 Supp. 22-3716(c). Although Downs acknowledges that the district court found that his "welfare would not be served by the imposition of intermediate sanctions," he contends that finding was not stated with sufficient particularity. We review issues involving a district court's compliance with the mandates of K.S.A. 2016 Supp. 22-3716 de novo. See *State v. Riojas*, 288 Kan. 379, Syl. ¶ 7, 204 P.3d 578 (2009); *State v. Kurtz*, 51 Kan. App. 2d 50, 54, 340 P.3d 509 (2014), *rev. denied* 302 Kan. 1017 (2015).

Even though there is some question as to whether Downs properly preserved this issue for appellate review, we will address the merits of Downs' argument in the interests of justice. When revoking probation under K.S.A. 2016 Supp. 22-3716(c)(9), the district judge must "explicitly address" *how* imposing an intermediate sanction would jeopardize public safety or fail to serve the defendant's welfare. *State v. McFeeters*, 52 Kan. App. 2d 45, Syl. ¶ 4, 362 P.3d 603 (2015). "'[W]hen something is to be set forth with particularity, it must be distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details.' [Citation omitted.]" 52 Kan. App. 2d at 48. In other words, the particularity requirement requires district courts to offer some explanation for why public or personal welfare would not be served by a particular defendant remaining on probation.

Nevertheless, "the plain and unambiguous language of the statute does not require any magic words. Rather, it requires that the *reasons* for finding that the members of the public will be jeopardized [or the defendant's welfare will not be served] be stated with particularity. [Citation omitted.]" *State v. Davis*, No. 111,748, 2015 WL 2137195, at *3 (Kan. App.) (unpublished opinion), *rev. denied* 302 Kan. ___ (2015). Consequently, in *Davis*, our court held that while the district court may "have been better served by including an ultimate determination using words drawn directly from the statute," it satisfied its obligations under 22-3716(c) when it found that it could not "'simply wait until [Davis did] harm to an individual.'" 2015 WL 2137195, at *3.

Here, a review of the transcript from the probation revocation hearing reveals that the reasons given by the district court were adequate to satisfy K.S.A. 2016 Supp. 22-3716(c)(9). In particular, the district court concluded, "I find that the welfare of Mr. Downs would not be served by any community correctional services program assignment because all of those resources have been made available to him and he has not fully utilized them." Furthermore, the district court offered the following explanation for its decision:

> "On the other hand, Mr. Downs, it's been argued by [your counsel] that we have not exhausted all of the community resources. Well, the fact of the matter is we have.

> "In your case, you were given the opportunity to go to the Community Corrections Residential program. You did successfully complete it from what I understand.

> "And that program, Mr. Downs, is the only program like it in the state of Kansas. No other community in Kansas has a Community Corrections Residential facility like we do. People are often told that it is the last resort before people are being sent to prison. And we have utilized every resource that's available for you.

"You were at the time of your first sentencing in 14 CR 1137 presumptive prison. You were at the time of your sentence in 14 CR 2392 presumptive prison for two reasons; one, because you were on probation for the first case; and because you're presumptive prison otherwise.

"In my experience, one thing that I have come to accept and understand is that oftentimes, without any LSI-R, any other instruments to guide me, I know that oftentimes behavior of people can best be judged by looking at their past behavior."

Accordingly, we do not find that the district court erred in either its decision to revoke Downs' probation or its decision to bypass intermediate sanctions under the circumstances presented.

Next, Downs challenges the constitutionality of subsections (c)(4) and (c)(9) of K.S.A. 2016 Supp. 22-3716. According to Downs, these subsections are unconstitutionally vague because they fail to "provide reasonable notice to [defendants] as to what conduct is prohibited [and lack] safeguards to prevent arbitrary and discriminatory enforcement." We decline to address this issue because the district court did not premise its revocation decision solely upon its determination that Downs' welfare would not be served by the imposition of a graduated sanction. As explained above, the district court also found that it was appropriate to revoke Downs' probation under K.S.A. 2016 Supp. 22-3716(c)(8) because the evidence introduced at the revocation hearing sufficiently established that he committed crimes while on probation. Downs failed to challenge this determination on appeal, and this failure eliminates the need for us to perform a constitutional analysis because of the district court's decision to revoke on other grounds. See *Wilson v. Sebelius*, 276 Kan. 87, 91, 72 P.3d 553 (2003) ("Appellate courts generally avoid making unnecessary constitutional decisions. Thus, where there is a valid alternative ground for relief, an appellate court need not reach constitutional challenges to statutes.").

12

Finally, Downs contends that the district court imposed an illegal sentence and violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution, as interpreted by the United States Supreme Court in *Descamps v. United States*, 570 U.S. __, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). In light of the Kansas Supreme Court's decision in *State v. Dickey*, 305 Kan. 217, 219-22, 380 P.3d 230 (2016), the State concedes that this case should be remanded for resentencing. When resentencing Downs, the district court should not include his 1984 juvenile adjudication for burglary as a person felony. Instead, the district court should count it as a nonperson crime.

In conclusion, we affirm the district court's decision to revoke Downs' probation and to bypass intermediate sanctions. However, we vacate the district court's disposition and remand this case for further proceedings.

Affirmed in part, vacated in part, and remanded with directions.