NOT DESIGNATED FOR PUBLICATION

No. 118,818

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DERRICK L. STUART,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed December 7, 2018. Affirmed in part, sentence vacated, and case remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER, J., and SIDNEY R. THOMAS, District Judge, assigned.

PER CURIAM: Derrick L. Stuart raises two separate issues in this appeal. First, Stuart contends the district court erred in revoking his probation and ordering his commitment to prison without imposing intermediate sanctions. Second, Stuart argues that the district court imposed an illegal sentence based on an incorrect criminal history score. Upon our review we conclude the district court did not err in revoking Stuart's probation. However, we hold the district court erred in sentencing Stuart based on an erroneous criminal history score. Accordingly, we affirm the district court's revocation of

1

probation and prison commitment but vacate the sentence and remand for resentencing in keeping with Stuart's correct criminal history score.

FACTUAL AND PROCEDURAL BACKGROUND

Stuart pled guilty to distribution of 5.27 grams of marijuana in May 2017. A presentence investigation (PSI) report showed that his criminal history score was A. This score was based on five prior person felony convictions. Three of the convictions occurred in Arkansas: a 1983 conviction for burglary, a 1983 conviction for attempted burglary, and a 1988 conviction for burglary. Given a criminal history score of A, Stuart's presumptive sentence was imprisonment. The district court sentenced Stuart to 51 months in prison but departed from the presumptive sentence and granted him probation.

A few months after sentencing, in July 2017, Stuart stipulated to violating his probation by consuming alcohol. As a consequence, the district court imposed a two-day jail sanction. In November 2017, Stuart again admitted to violating his probation by failing to attend drug and alcohol treatment, not verifying his job search activities, failing to obtain full time employment, not providing verification of community service hours, and failing to report to his probation officer. Stuart also tested positive for ingesting cocaine. As a result, the district court revoked Stuart's probation and ordered his commitment to prison.

Stuart appeals.

PROBATION REVOCATION

For his first issue on appeal, Stuart contends the district court erred by revoking his probation without first imposing intermediate sanctions. In support, Stuart asserts the statute relied upon by the district court to bypass intermediate sanctions, K.S.A. 2017

2

Supp. 22-3716(c)(9)(B), was not in effect at the time he was sentenced and, as a result, its provisions were not applicable in this case.

We begin the analysis with a brief mention of our standards of review. "Where the issue is the propriety of the sanction imposed by the district court for a probationer's violation of the terms and conditions of probation, the standard of review is an abuse of discretion." *State v. Hurley*, 303 Kan. 575, 580, 363 P.3d 1095 (2016). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Since our review also involves interpretation of Kansas statutes, these matters are questions of law for which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

K.S.A. 2017 Supp. 22-3716(c) delineates the sanctions a district court can impose upon finding a probation violation. Typically, the district court is required to impose intermediate sanctions before it is permitted to revoke an offender's probation. K.S.A. 2017 Supp. 22-3716(c)(1). However, there are several exceptions. The pertinent exception the district court relied upon in this case allows the district court to revoke probation without imposing graduated sanctions if probation was originally granted as a dispositional departure. K.S.A. 2017 Supp. 22-3716(c)(9)(B). This specific subsection went into effect on July 1, 2017. L. 2017, ch. 92, § 8. Important to the resolution of the issue on appeal, the relevant statutory subsection was in effect *after* Stuart committed the crime but *before* his latest probation violation.

In the district court, Stuart did not object to the court's reliance on K.S.A. 2017 Supp. 22-3716(c)(9)(B). However, he claims our court may consider this matter on appeal because this issue presents a question of law arising on proved or admitted facts and it is finally determinative of the case. Despite Stuart's lack of objection in the district

3

court, we will consider his argument for the first time on appeal. See *State v. Foster*, 290 Kan. 696, 722, 233 P.3d 265 (2010).

A "fundamental rule for sentencing is that the person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was committed." *State v. Overton*, 279 Kan. 547, 561, 112 P.3d 244 (2005). Citing this rule, Stuart argues that the district court erred by applying a statute that was not in effect at the time he committed the offense. In short, he asserts the district court erred by applying the statutory subsection retroactively.

Generally, "a statute operates only prospectively unless there is clear language indicating the legislature intended otherwise. An exception to this rule has been employed when the statutory change is merely procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties. [Citations omitted.]" *State v. Wells*, 297 Kan. 741, 761, 305 P.3d 568 (2013).

In the present case, the Legislature evidently intended for K.S.A. 2017 Supp. 22-3716(c)(9)(B) to apply to situations like Stuart's probation revocation even though the statutory subsection was not in effect at the time he was originally sentenced. While the language of the subsection does not mention retroactivity, a related subsection in the same statute does discuss it. K.S.A. 2017 Supp. 22-3716(c)(12) provides: "The violation sanctions provided in this subsection shall apply to any violation of conditions of release or assignment or a nonprison sanction *occurring on and after July 1, 2013, regardless of when the offender was sentenced for the original crime or committed the original crime for which sentenced.*" (Emphasis added.)

Our court has interpreted this statutory language to mean "the date that controls the law that applies to the imposition of sanctions for violating probation is the law that existed when a defendant violated probation, not the law that existed when the defendant

4

committed the underlying crime . . . nor the law in effect when the probation hearing occurred." *State v. Kurtz*, 51 Kan. App. 2d 50, 56, 340 P.3d 509 (2014); see also *State v. McGill*, 51 Kan. App. 2d 92, 95, 340 P.3d 515 (2015) ("Our [L]egislature has now made its intent clear—the date of the defendant's probation violation controls whether the intermediate sanction provisions of K.S.A. 2013 Supp. 22-3716[c] apply.").

Stuart argues that the retroactivity provision, K.S.A. 2017 Supp. 22-3716(c)(12), does not apply to K.S.A. 2017 Supp. 22-3716(c)(9)(B) because it went into effect three years prior to K.S.A. 2017 Supp. 22-3716(c)(9)(B). L. 2014, ch. 102, § 8. He states that the retroactivity subsection "merely expressed intent for the [L]egislature's recently created graduated sanctioning scheme to apply to probationers who violated the terms of their probation prior to the enactment of that scheme."

In support of his position, Stuart cites *State v. Martinez*, No. 116,175, 2017 WL 3947378 (Kan. App. 2017) (unpublished opinion). In *Martinez*, our court determined that the 2016 amendments to K.S.A. 21-6810(d), dealing with the classification of juvenile adjudications, did not apply retroactively despite a retroactivity clause added in 2015. However, the retroactivity clause in *Martinez* was different from the retroactivity clause in the present case. In *Martinez*, the retroactivity clause contained limiting language—it said "[t]he amendments made to this section *by this act* are procedural in nature and shall be construed and applied retroactively." (Emphasis added.) K.S.A. 2015 Supp. 21-6810(e); *Martinez*, 2017 WL 3947378, at *11. We interpreted the language "by this act" to refer specifically to House Bill 2053, which enacted the 2015 amendments to K.S.A. 21-6810(d). *Martinez*, 2017 WL 3947378, at *11-12. Our court determined that the limiting language purposefully excluded other amendments and there was no clear indication that the Legislature otherwise intended for amendments other than the 2016 amendments to apply retroactively.

5

In the present case, there is no limiting language in the retroactivity clause. Instead, the language of K.S.A. 2017 Supp. 22-3716(c)(12) is inclusive: "The violation sanctions provided *in this subsection* shall apply to any violation of conditions of release or assignment or a nonprison sanction occurring on and after July 1, 2013, regardless of when the offender was sentenced for the original crime or committed the original crime for which sentenced." (Emphasis added.) K.S.A. 2017 Supp. 22-3716(c)(12). Importantly, this language specifically says that the provisions "in this subsection" are included. When the Legislature added K.S.A. 2017 Supp. 22-3716(c)(9)(B) in 2017, it was fully aware of the retroactivity language in K.S.A. 2017 Supp. 22-3716(c)(12) and it did not alter or amend the language in any way. See *In re Tax Appeal of American Restaurant Operations*, 264 Kan. 518, 524, 957 P.2d 473 (1998) ("The legislature is presumed to know the law.").

By its plain language, the Legislature intended for the law in effect on the date of a probation violation to control the imposition of sanctions. K.S.A. 2017 Supp. 22-3716(c)(9)(B) was in effect on the date of Stuart's probation violation. Accordingly, the district court did not err by applying this statutory provision.

Stuart also argues that the Ex Post Facto Clause of the United States Constitution prohibits retroactive application of K.S.A. 2017 Supp. 22-3716(c)(9)(B). U.S. Const. art. I, § 10, cl. 1. Stuart notes that at the time he "committed his crime of conviction, the maximum punishment for a second-time probation violation (barring a special judicial finding) was a 180-day prison sanction." Retroactively increasing his "exposure to punishment for probation violations" he asserts "would constitute ex post facto law making." We disagree.

An ex post facto law is "[a] statute that criminalizes an action and simultaneously provides for punishment of those who took the action before it had legally become a crime"; specifically, "a law that impermissibly applies retroactively, [especially] in a way

6

that negatively affects a person's rights, as by making into a crime an action that was legal when it was committed or increasing the punishment for past conduct." Black's Law Dictionary 701 (10th ed. 2014); see also *Fletcher v. Peck*, 10 U.S. [6 Cranch] 87, 138, 3 L. Ed. 162 (1810) ("An *ex post facto* law is one which renders an act punishable in a manner in which it was not punishable when it was committed.").

As discussed earlier, the law that applies to a probation violation hearing is the law that is in effect on the date a person violates a probation. *Kurtz*, 51 Kan. App. 2d at 56-57. On the date Stuart violated his probation, K.S.A. 2017 Supp. 22-3716(c)(9)(B) was in effect. Application of K.S.A. 2017 Supp. 22-3716(c)(9)(B), therefore, is not ex post facto because it was in effect on the date of the violation. At that time, Stuart was on notice that if he violated the terms of his probation the district court could revoke the probation without imposing graduated sanctions.

Finally, Stuart argues that K.S.A. 2017 Supp. 22-3716(c)(9)(B) is a substantive statutory provision that cannot be applied retroactively. While substantive statutes generally operate prospectively, they may apply retroactively if the Legislature clearly intended such an application. *Wells*, 297 Kan. at 761. That is the case here, because the statute contains an explicit retroactivity provision.

Because the Legislature clearly intended for K.S.A. 2017 Supp. 22-3716(c)(9)(B) to apply to Stuart's probation revocation proceedings, and because application of the statute does not violate the Ex Post Facto Clause, the district court's revocation of probation and order of commitment to prison is affirmed.

ILLEGAL SENTENCE

For his second issue, Stuart contends the district court imposed an illegal sentence by using an improperly calculated criminal history score. Stuart's PSI report showed that

7

he had five prior adult person felonies, which resulted in a criminal history score of A. Stuart argues that three of those convictions—a 1983 Arkansas burglary conviction, a 1983 Arkansas attempted burglary conviction, and a 1988 Arkansas burglary conviction—should have been scored as nonperson felonies, which would have reduced his criminal history score and, as a result, shortened the duration of his sentence.

Stuart did not object to his criminal history in the district court. However, this court may correct an illegal sentence at any time. K.S.A. 2017 Supp. 22-3504(1). Accordingly, a defendant can challenge the classification of a prior conviction for the first time on appeal even if the defendant did not object below. *State v. Dickey*, 301 Kan. 1018, Syl. ¶ 4, 350 P.3d 1054 (2015).

In resolving this question we apply the following standard of review: "Whether a prior conviction or adjudication was properly classified as a person or nonperson crime for criminal history purposes raises a question of law subject to unlimited review." 301 Kan. 1018, Syl. ¶ 5.

Presumptive sentences for felony drug crimes are contained in a two-dimensional sentencing grid. K.S.A. 2017 Supp. 21-6805. On one axis is the severity level of the crime of conviction, ranging from one to five. On the other axis is the offender's criminal history score, ranging from A to I. K.S.A. 2017 Supp. 21-6805. If an offender has three or more adult person felony convictions, then the offender's criminal history score is A. If an offender has two adult person felony convictions, then the offender's criminal history score is B. K.S.A. 2017 Supp. 21-6809. Stuart's PSI report showed that he had five person felonies. If the district court incorrectly classified three Arkansas convictions as person felonies, then Stuart's criminal history score should be reduced to a B.

The process for classifying out-of-state convictions is described in K.S.A. 2017 Supp. 21-6811(e). An out-of-state crime is "classified as either a felony or a misdemeanor

8

according to the convicting jurisdiction." K.S.A. 2017 Supp. 21-6811(e)(2). The state of Kansas determines whether the crime should be classified as a person or nonperson crime. The sentencing guidelines provide: "In designating a crime as person or nonperson, comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be referred to." K.S.A. 2017 Supp. 21-6811(e)(3). The issue presented on appeal is whether the Arkansas burglary statute, in effect at the time of Stuart's prior convictions, is comparable to Kansas' current burglary statute.

The Kansas Supreme Court recently clarified what it means to be a comparable offense in *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018). There, our Supreme Court held, "[t]he elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." 307 Kan. at 562.

Citing *Wetrich*, Stuart argues that the elements of the Arkansas burglary statute are broader than the elements of the Kansas burglary statute and therefore are not comparable. At the time of Stuart's prior convictions, Arkansas' burglary statute provided: "A person commits burglary if he enters or remains unlawfully in an occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment." Ark. Stat. Ann. § 5-39-201 (1987); General Acts of Arkansas 1975, No. 280 § 2002. The statute defined "occupiable structure":

> "(1) 'Occupiable structure' means a vehicle, building, or other structure:
>> (a) where any person lives or carries on a business or other
> calling; or
>> (b) where people assemble for purposes of business, government,
> education, religion, entertainment, or public transportation; or
>> (c) which is customarily used for overnight accommodation of
> persons; whether or not a person is actually present. Each unit of an

9

occupiable structure divided into separately occupied units is itself an occupiable structure." Ark. Stat. Ann. § 5-39-101 (1987); General Acts of Arkansas 1975, No. 280 § 2001.

Stuart committed his current offense in May 2015. At that time, Kansas' burglary statute provided:

> "(a) Burglary is, without authority, entering into or remaining within any:
> (1) Dwelling, with intent to commit a felony, theft or sexually motivated crime therein;
> (2) building, manufactured home, mobile home, tent or other structure which is not a dwelling with intent to commit a felony, theft or sexually motivated crime therein; or
> (3) vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony, theft or sexually motivated crime therein." K.S.A. 2014 Supp. 21-5807(a).

On the date that Stuart committed his current offense, Kansas law defined dwelling: "'Dwelling' means a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." K.S.A. 2014 Supp. 21-5111(k). Burglary of a dwelling was defined in K.S.A. 2014 Supp. 21-5807(a)(1) as a person felony. K.S.A. 2014 Supp. 21-5807(c)(1)(A). Other types of burglary were nonperson felonies. K.S.A. 2014 Supp. 21-5807(c)(1)(B)-(C).

As a preliminary matter, the State argues that this sentencing issue is not properly before our court because Stuart failed to designate a sufficient record. The State asserts that Arkansas' burglary statute is divisible, and Stuart had the burden of proving under which subsection he was convicted. Without this information, the State claims our court must accept the district court's sentence as proper.

10

A divisible statute is one which "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis v. United States*, 579 U.S. ___, 136 S. Ct. 2243, 2249, 195 L. Ed. 2d 604 (2016). A statute which merely "enumerates various factual means of committing a single element" is not a divisible statute. 136 S. Ct. at 2249.

At the time of Stuart's prior crimes was the Arkansas burglary statute a divisible statute? We are persuaded that by providing three different definitions of "occupiable structure," the Arkansas Legislature was creating alternate means of committing a single crime of burglary. The Kansas Supreme Court examined a similar statute in *Wetrich*. There, a Missouri statute defined burglary in the second degree in a manner similar to the Arkansas statute:  a person committed the offense "'when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein.'" *Wetrich*, 307 Kan. at 562 (quoting Mo. Rev. Stat. § 269.170 [1986]). Like Arkansas' statute, Missouri's statute had three different definitions of "inhabitable structure." 307 Kan. at 563 (citing Mo. Rev. Stat. § 569.010 [1986]). Our Supreme Court found that the definition merely created alternative means of committing the crime. 307 Kan. at 564. We adopt the rationale of our Supreme Court and conclude the Arkansas burglary statute was not divisible.

Alternatively, the State argues that the Arkansas burglary convictions are comparable to the Kansas crime of burglary of a dwelling. In particular, the State argues that the "identical or narrower" rule of *Wetrich* should not be applied retroactively because it constitutes a change in the law. The State cites K.S.A. 2017 Supp. 22-3504(3), which provides that "[a] sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is pronounced."

Our court recently rejected the State's argument and held that *Wetrich* did not change the law. *State v. Smith*, 56 Kan. App. 2d 343, 353, 2018 WL 4374275 (2018) ("[T]he Kansas Supreme Court did not change the law in *Wetrich*. Instead, the court's

11

decision is better characterized as reinterpreting the meaning of the term 'comparable offenses' within the [Kansas Sentencing Guidelines Act].").

The State does not attempt to argue that Arkansas' burglary statute is identical to or narrower than the relevant Kansas burglary statute. As Stuart correctly notes, there are two primary reasons the Arkansas statute is broader than and, thus, not comparable to Kansas' statute. First, Arkansas' definition of "occupiable structure" is broader than Kansas' definition of "dwelling." A Kansas dwelling must be "intended for use as a human habitation, home or residence." K.S.A. 2014 Supp. 21-5111(k). There is no such limitation in Arkansas' definition of "occupiable structure." On the contrary, an "occupiable structure" can include places that are not intended for such uses, like businesses, houses of worship, or public transportation.

Second, Arkansas' statute is broader because the offender must have the intent to commit "any offense punishable by imprisonment." Ark. Stat. Ann. § 5-39-201 (1987). The relevant Kansas statute is more limited because the offender must have the intent to commit a felony, theft, or sexually motivated crime. K.S.A. 2014 Supp. 21-5807(a)(1). In the 1980s, for example, Arkansas authorized imprisonment for misdemeanor offenses. Ark. Stat. Ann. §§ 5-4-401(b) and 5-4-402(b). Assuming the other elements were met, a person who had the intent to commit a misdemeanor (other than theft or a sexually motivated crime) could be convicted of burglary in Arkansas but not in Kansas.

We conclude that the Arkansas burglary statute upon which Stuart was convicted is not identical to or narrower than the Kansas burglary statute. As a consequence, Stuart's prior Arkansas burglary convictions are not comparable to any Kansas offense. "If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction was committed, the out-of-state crime shall be classified as a nonperson crime." K.S.A. 2017 Supp. 21-6811(e)(3). The three prior Arkansas burglary convictions were erroneously scored as person felonies at the time of Stuart's sentencing.

12

Accordingly, Stuart's sentence is vacated and the case is remanded for resentencing with directions to consider his three prior Arkansas burglary convictions as nonperson felonies in calculating his criminal history score.

Affirmed in part, sentence vacated, and case remanded with directions.